# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN FELIX, | 1:09-CV-00223 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of guilty to second degree murder in violation of Cal. Penal Code § 187. See Answer, Exhibit 1. On June 10, 1992, Petitioner was sentenced to serve an indeterminate term of sixteen years to life in state prison with the possibility of parole. Id.

On February 27, 2007, a subsequent parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. See

1  Petition, Exhibit A. Petitioner attended the hearing and was represented by an attorney. Id. At the
2  conclusion of the hearing, the Board denied parole and deferred rehearing for one year. Id. at 78-
3  82.
4    On January 10, 2008, Petitioner filed a petition for writ of habeas corpus in the Los
5  Angeles County Superior Court. See Answer, Exhibit 2. On April 10, 2008, the petition was
6  denied in a reasoned decision. Id. Petitioner then filed a habeas petition in the California Court of
7  Appeals, Second Appellate District, on November 3, 2008. See Answer, Exhibit 3. The petition
8  was denied on November 6, 2008. Id. On November 19, 2008, Petitioner filed a petition for
9  review in the California Supreme Court. See Answer, Exhibit 4. On January 14, 2009, the
10  petition was denied. Id.
11    On February 3, 2009, Petitioner filed the instant petition for writ of habeas corpus in this
12  Court. The petition challenges the 2007 decision of the Board of Parole Hearings denying parole.
13  Petitioner contends: 1) the Board failed to provide him with individualized consideration when it
14  based its decision on acts he did not commit; 2) a parole decision based on the circumstances of
15  the offense rather than an individual's actions is unconstitutional; 3) the Board's decision was not
16  supported by "some evidence"; 4) the Board's continued reliance on the commitment offense is
17  ineffective and dangerous; 5) his second degree murder does not indicate unsuitability because it
18  was not especially heinous, atrocious or cruel; and 6) there is no evidence that Petitioner is a
19  current risk to society. On May 6, 2009, Respondent filed an answer to the petition. Petitioner
20  filed a traverse to Respondent's answer on May 28, 2009.

**FACTUAL BACKGROUND**[1]

22  On October 19, 1991, at 1014 North Main Avenue, Wilmington, a witness was
23  interviewed and related the following: He had observed a tan Monte Carlo or Regal coming south
24  on Main Avenue with the passenger, David Neisinger, sitting in the right side window area. The
25  passenger was leaning over the top of the car holding a handgun with both hands and pointing at
26  a group of people on the east side of the street. At this point, the passenger yelled, "West Wilmas

---

[1] The information is derived from the factual summary as set forth in the parole hearing proceedings. See Petition, Exhibit 1 at 10-12.

2

Locos" and began firing at the group of people. The car continued south on Opp Street while the passenger climbed back into the front passenger seat. The car turned right on Opp and sped away.

At 1:00 a.m. on the same date, police officers on patrol were traveling in a police vehicle on Opp Street when they heard several gunshots coming from the northeast corner of Main Avenue and Opp Street, one block east of their location. The officers immediately observed a brown Cutlass turn right from southbound Main Avenue to eastbound Opp Street. Petitioner and Neisinger were taken into custody.

During a crime scene investigation, officers recovered a nine-millimeter automatic pistol thrown under a parked vehicle located on the north side of Opp Street, west of Main and east of the alley utilized by Petitioner and Neisinger. That location was approximately where officers first observed Petitioner and Neisinger's vehicle fleeing from the scene. The victim, Arnulfo Rodarte, was observed by police lying supine on the sidewalk with a single gunshot wound to the left side of his chest. There was a large pool of blood on the ground near the victim's shoulder and head. A rescue ambulance was requested and the victim failed to respond to treatment and was pronounced dead at 1:20 a.m. by paramedics.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [his] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but

4

1  unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
2  413.
3      "[A] federal court may not issue the writ simply because the court concludes in its
4  independent judgment that the relevant state court decision applied clearly established federal
5  law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
6  A federal habeas court making the "unreasonable application" inquiry should ask whether the
7  state court's application of clearly established federal law was "objectively unreasonable." Id. at
8  409.
9       Petitioner has the burden of establishing that the decision of the state court is contrary to
10 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
11 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
12 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
13 state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
14 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).
15     AEDPA requires that we give considerable deference to state court decisions. The state
16 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
17 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
18 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).
19     In this case, because the California Supreme Court summarily denied the habeas petition,
20 this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501
21 U.S. 797, 804-05 & n.3 (1991).
22 II.    Review of Petition
23     A parole release determination is not subject to all the due process protections of an
24 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
25 also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
26 protections that particular situations demand). "[S]ince the setting of a minimum term is not part
27 of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
28 constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at

1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." <u>Id</u>.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); <u>Irons v. Carey</u>, 505 F.3d 846, 851 (9th Cir.2007), *quoting* <u>Hill</u>, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." <u>Irons</u>, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. <u>Sass</u>, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

"[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of

the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) Previous criminal record; and 3) Violent criminal behavior during imprisonment. See Petition, Exhibit 1 at 78-83.

First, the Board determined that Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[2] The Board found that Petitioner's offense involved attacking multiple victims. 15 Cal. Code Regs. § 2402(c)(1)(A). The Board noted that Petitioner drove the vehicle while his crime partner shot at a group of people, ultimately killing one individual. The Board also determined that the offense was carried out in a calculated manner. 15 Cal. Code Regs. § 2402(c)(1)(B). The Board noted that Petitioner and his partner deliberately drove a vehicle to a known rival gang location equipped with gloves and a firearm to retaliate and exact revenge for a fellow gang member. As noted by the superior court, Petitioner and his crime partner's actions were "deliberate, planned, dispassionate, and calculated." See Answer, Exhibit 2. Finally, the Board determined that the motive for the crime was very trivial. 15 Cal. Code

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

Regs. § 2402(c)(1)(E). Again, the Board noted that the drive-by shooting was committed in retaliation, because a fellow gang member had been physically assaulted. The superior court noted that committing a murder against a random rival gang member in retaliation is a very trivial motive. In light of the facts of the offense, the superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

The Board also found Petitioner's prior offenses to be an indicator of unsuitability. 15 Cal. Code Regs. § 2402(c)(2). Petitioner had sustained a juvenile conviction for burglary and an adult conviction for battery. See Petition, Exhibit 1 at 21-22. The superior court's determination that there was some evidence to support this finding was reasonable.

Finally, the Board determined that Petitioner's continued violent criminal behavior during incarceration further indicated he remained a current risk of danger to the community. 15 Cal. Code Regs. § 2402(c)(6). The Board noted that Petitioner had received three negative counseling chronos ("CDC 128") during his incarceration, with the most recent being in 2003 for misuse of state property. Of greater significance, however, were the five six serious rules violations ("CDC 115") he sustained during his incarceration. The most recent occurred in 2001 for delaying count, but the prior violations were for very violent behavior. In 1995, he was found guilty of fighting. Also in 1995, he stabbed a fellow inmate. In 1994, he committed an assault and battery on an inmate. And in 1993, he committed another stabbing. The Board concluded Petitioner's disciplinary problems showed he still posed an unreasonable risk of danger to the public if released. The superior court found some evidence supported this finding, given that the violence was extreme and committed after the underlying murder offense. The superior court's conclusion is not unreasonable.

The Board also considered the positive factors favoring parole release. Petitioner's psychological report was somewhat favorable, although the psychologist expressed concern that Petitioner had an anti-social behavior disorder that was improving. The Board also found Petitioner had viable parole plans. The Board commended Petitioner for having obtained five different vocations. Petitioner was also successfully continuing his education, having been placed

8

on the Dean's List for a semester. The Board also commended Petitioner for his extensive self-help programming. Nevertheless, the Board found Petitioner's gains were recent and needed to be sustained over some time before the Board could conclude he no longer posed an unreasonable risk of danger to the public, given his extremely violent past. The state court finding that some evidence supported this determination was not unreasonable.

Petitioner's various other arguments are without merit. As discussed above, the Board gave Petitioner individualized consideration by reviewing, *inter alia*, the commitment offense, Petitioner's history, his conduct while in prison, his psychological report, his programming, his vocational training, and his continuing education. In addition, the superior court properly determined that Petitioner's accomplice's actions could be considered in its determination of the facts of the case and Petitioner's own culpability. Petitioner also argues that the Board's continuing reliance on the unchanging circumstances of the underlying offense violates his due process rights. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision. The Board found Petitioner's prior criminal history and especially his serious disciplinary problems to be of great weight in concluding Petitioner would pose an unreasonable danger to public safety should he be presently released.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The petition for writ of habeas corpus be DENIED; and

9

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 26, 2009**          **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE